Thomas SMITH, Plaintiff in Error,

v.

W. C. (Bill) HALL, Defendant in Error.

No. 40694.

Supreme Court of Oklahoma.

May 24, 1966.

Rehearing and Motion to Recall Mandate
Denied Sept. 27, 1966.

Lampkin, Wolfe & Blankenship, Bagwell, Jordan & Gatlin, Oklahoma City, for plaintiff in error.

A. Francis Porta, El Reno, John R. Couch, Melvin F. Pierce, Porta & Weaver, El Reno, Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, of counsel, for defendant in error.

DAVISON, Justice.

Thomas Smith (plaintiff) instituted this action in the lower court against W. C. (Bill) Hall (defendant) to recover for personal injuries suffered by plaintiff on October 29, 1954, as a result of the allegedly negligent acts of an employee of Hall, committed while setting the substructure or base for an oil drilling rig preliminary to the actual well drilling. Plaintiff was injured when the substructure fell on him. The parties will be referred to by their trial court designation. The issues presented by the pleadings included the issue of whether the employee, Crouch, was at the time of the accident the employee of defendant. Specifically, defendant's contention was that at the time of the accident Crouch occupied the status of a loaned servant of Kerr-McGee Drilling Company. At the close of plaintiff's evidence on April 25, 1963, the trial court sustained defendant's demurrer to the evi-

dence on the ground that such evidence reflected in fact and law that Crouch was a loaned servant of Kerr-McGee. Consequently the acts of negligence, if any, were not the liability of defendant. Plaintiff has appealed from that order and judgment.

Plaintiff contends his evidence reflects that at the time of the injury Crouch was the agent, servant, and employee of the defendant.

■ In determining the proposition of whether a demurrer to the evidence should have been sustained it is a well established rule of law that where the evidence of plaintiff, together with such inferences and conclusions as may reasonably be drawn therefrom, does not warrant recovery against defendant a demurrer to the evidence should be sustained. Mid-Continent Petroleum Corp. v. Wilhoit, Okl., 270 P. 2d 645. See also Schneider v. Athey, 113 Okl. 94, 239 P. 242.

The record reflects that Carter Oil Company had an oil and gas lease on lands in Garvin County, Oklahoma, and Kerr-McGee had contracted to drill a well thereon. Kerr-McGee had its own drilling rig and equipment, including the substructure or base, which support the derrick and engine and the floor upon which the drilling operations are performed. The term "rigging up" is applied to the operation at the drill site of setting the substructure, raising the mast derrick thereon, and connecting up all of the equipment and machinery, preliminary to commencement of actual drilling operations. On the morning of October 29, 1954, Kerr-McGee had its tool pusher and three drill crews, each consisting of a driller and his crew, on the location for the purpose of rigging up. Plaintiff was a member of one of the crews and was an employee of Kerr-McGee. The tool pusher was responsible for and in overall charge of the rigging up, and the other employees of Kerr-McGee were subject to his order.

On the same morning the defendant, by arrangement with Kerr-McGee had two of his tractor bulldozers at the location.

Crouch was an experienced dozer operator and had been hired by defendant to operate one of the bulldozers and his wages were paid by defendant. These bulldozers had a blade in front for moving dirt and a winch in back for lifting. An invoice from defendant to Kerr-McGee reflects that defendant's overall charge for the services of the bulldozer was $10.00 per hour. The invoice reflects charges for October 29, 1954, and recites in pertinent part as follows:

"9½ Hrs. w/D6 Bulldozer w/winch to help rig up and
dig working pits.    @$10.00    $95.00"

Crouch testified he had worked for defendant about two years and that defendant was engaged in mostly oil field work, digging pits and rigging up, building roads and setting cattle guards, "tank grading, fire walls." He said that the first thing in the morning he would service the tractor, grease it, and have it "fired up and ready to go to work" and that the foreman for defendant came to a location where work was being done at least once a day.

■ Crouch was the main witness for plaintiff and it is his testimony that for all practical purposes determines whether he was a loaned servant. Crouch, and presumably the other dozer operator, leveled the drilling site and were engaged in digging pits for the (drilling) and when the first section of the substructure was brought in and Kerr-McGee employees started positioning it upon (wooden) matting boards next to the spot of the proposed well. This substructure section is constructed of heavy metal and is about 4 feet wide, 35 to 40 feet long, and 9 to 10 feet high. At this point the Kerr-McGee tool pusher, or another of its employees, came down and told Crouch to come up with his bulldozer. The tool pusher told Crouch to "line up" the substructure with the hole location. Crouch began pushing with the tractor and the matting board on which the east end rested was pushed out of position. The tool pusher told Crouch to back up to that end and "pick it up and

straighten the matting board." Crouch backed up the tractor and began unreeling the cable from the winch for placing a "bridle" around such end, when he was told by the tool pusher that a single loop of the cable would be placed around the middle of a cross-member at the bottom of the substructure. Crouch testified he knew this was not safe, but "I didn't have the authority to tell them" to use a bridle, and "that wasn't my job, to tell him what to do." Crouch, at the direction of the tool pusher, raised the end about 3 inches and again about 4 or 5 inches, when the substructure toppled over on plaintiff and injured him. Neither Hall nor his foreman were present when these rigging up operations took place.

Crouch further answered affirmatively, that when he arrived at the location that morning he was instructed by defendant's foreman that, when he went on a job for Kerr-McGee, he was to take all his direct instructions "from the tool pusher and nobody else, or one of the drillers possibly" and:

"Q All the instructions came from them, isn't that right?

A Yes. When we rigged one up, you done what they told you to do.

Q And not what anybody else told you to do?

A No.

Q And not what you wanted to do, but what you were told to do, isn't that right, Glen?

A Right.

Q And you didn't do one single thing in the operation of that bulldozer except what the tool pusher, or one of the drillers, told you to do, did you?

A Right."

\* \* \* \* \* \*

"Q And when you came up, he told you that he wanted you to help in the rigging up and he wanted you to stay there whether you had anything to do or not, not to go back down to the pit, that he didn't want to be running back and forth, isn't that right?

A That's right. That's what you usually did when they called you up, you stayed until they got through."

and that, the tool pusher was giving orders and telling everybody what to do; that the tool pusher directed him in pushing the subtructure and in backing up to the end, and:

"Q Why did you do it?

A Because he told me to.

Q Well, he was telling you what to do, wasn't he?

A Yes, sir.

Q He told you everything to do?

A Yes.

Q And in detail, to you everything that you had done up to that point?

A Right."

And that, if he (Crouch) had refused to pick up the substructure "I would have got run off" and that if the tool pusher had told him to push the rig over he would have tried it. There is other testimony of the same or similar nature. Crouch stated that after doing his part in rigging up, the trucks would do the rest, and "I went back to my work" digging pits.

Crouch did testify that if the tool pusher had told him to loop the cable around the cross-member or to shovel dirt, he would have refused, but would have followed such instructions when given by defendant. We do not regard this as conflicting with his obvious submission to the authority of the tool pusher in operating the bulldozer, because his testimony reflects it was his belief that such work did not fall within his status as a dozer operator helping Kerr-McGee rig up, but was the work of a Kerr-McGee swamper. In any event the circumstance did not arise and is only a supposition.

It is our conclusion, and was undoubtedly the conclusion of the trial judge, that the combination of Crouch and the bulldozer were made subject to the exclusive direction and control of Kerr-McGee in assisting in the Kerr-McKee operation of rigging up, and that Crouch consented to such

direction and control. This is shown by the above evidence and in particular by the directions given Crouch by defendant, the assumption of control and direction by Kerr-McGee, and the fact that Crouch afterward went "back to my work" digging pits.

■ In the case of Wylie-Stewart Machinery Co. v. Thomas, 192 Okl. 505, 137 P.2d 556, the applicable rules are stated:

"It is well settled that one who is the general servant of another may be loaned or hired by his master to another for some special service so as to become, as to that service, the servant of such third person.

"Servant lent by master to another for particular employment, although remaining general servant of master, must be dealt with as servant of one to whom he is lent, as regards anything done in the latter's employment.

\*   .\*   \*   \*   \*   \*

"In determining whether general master of servant or person to whom servant was lent is liable for servant's acts, neither payment of wages nor power to hire and discharge is controlling."

In discussing the cited case, this court in Crutchfield v. Melton, Okl., 270 P.2d 642, 645, said:

"The cited case established, in this jurisdiction, the rule that the relationship is to be 'judged by the nature of the duty being performed by the servant at the time, and which of the two masters is exercising control.' The question to be answered in making the determination is—In the act which the servant was performing at the time, was he in the business of and subject to the direction of the temporary employer as to the details of such act?"

■ Plaintiff relies on Hodges v. Holding, 204 Okl. 327, 229 P.2d 555. The case is distinguishable and not applicable. There Hodges was in the trucking business and had furnished a truck and two men to move (truck) machinery and equipment a distance of a few hundred feet up to the well, where the drilling contractor was engaged in rigging up. When a piece of equipment was desired the driller merely designated the article to be brought up. While the truck was so engaged it ran into and injured Holding, an employee of the drilling contractor. It was not shown that the driller directed the truck employees in the details of their work or that Hodges (trucking contractor) had parted with his direction and control over them and transferred that authority to the drilling contractor. The decision held that there was sufficient evidence to sustain a jury verdict to the effect that the operators of the truck were employees of Hodges at the time of the accident. In the cited case we stated:

"The controlling factor in determining whether a regular employee of one master has become the special or loaned servant of another is: Has the general employer released, for the time required to perform some particular work, all authority to control or direct the manner and method of the work to be done and surrendered such direction and control to the special employer?"

Plaintiff also relies on City of Tulsa v. Randall, 174 Okl. 630, 52 P.2d 33. The case is not in point. The City claimed its truck driver was a loaned employee of R F C because it had directed him to transport some R F C workers. The facts revealed the truck driver was returning from a useless journey because the R F C workers had already left and therefore the driver had never entered into the claimed special service.

■ This court has held that if the general employer has not resigned full control of the servant for the time during which the work is being performed, then the servant does not become the servant of the person for whom the work is performed merely because such person points out the work to the servant or gives him directions as to details of and manner

of doing the work. A. K. McBride Const. Co. v. Arkhoma Steel Erection Co., Okl., 348 P.2d 541.

The determination of whether the servant of the general employer has become the loaned or hired servant of another is not always a question of fact to be determined by the jury. In Hull v. Enid General Hospital Foundation, 194 Okl. 446, 152 P.2d 693, the lower court sustained a demurrer to plaintiff's evidence and we affirmed. The case involved, inter alia, the question of whether x-ray technician employees of the hospital were the loaned servants of the physician while assisting him in giving treatments to plaintiff. The case held that there was no conflict in the evidence, nor did the record present a case where reasonable persons might differ, that they were loaned servants of the physician and consequently the hospital was not liable for their negligence while assisting in giving X-ray treatments.

In the present case the evidence reflects without conflict that the defendant (general employer) released his authority to control and direct his employee, Crouch, for the time required for Crouch to perform the special service of assisting Kerr-McGee in its business of rigging up, and surrendered such direction and control to Kerr-McGee. The employee Crouch assented to the direction and control of Kerr-McGee, and Kerr-McGee assumed such direction and control and directed Crouch in the manner, method, and detail of performing such special service. It is our conclusion that under the evidence Crouch became the loaned servant of Kerr-McGee and any negligence of Crouch during such special service was as a servant of Kerr-McGee and not of the defendant.

The lower court was correct in sustaining the demurrer to plaintiff's evidence.

Affirmed.

JACKSON, V. C. J., and WILLIAMS, BLACKBIRD, IRWIN, BERRY, HODGES and LAVENDER, JJ., concur.