**Bill LUCKETT and Betty Luckett, Plaintiffs-Appellants,**

v.

**BETHLEHEM STEEL CORPORATION, a Delaware Corporation, and Bethlehem Singapore Private Limited, a corporation organized under the Republic of Singapore, Defendants-Appellees.**

Nos. 77–1827, 77–1828.

United States Court of Appeals, Tenth Circuit.

Argued March 13, 1979.

Decided March 21, 1980.

Robert K. McCune, Oklahoma City, Okl. (Gene Stipe of Stipe, Gossett, Stipe & Harper, Oklahoma City, Okl., was with him on brief), for plaintiffs-appellants.

John R. Couch, Oklahoma City, Okl. (Gerald P. Green of Pierce, Couch, Hendrickson, Johnston & Boysinger, Oklahoma City, Okl., was with him on brief), for defendant-appellee, Bethlehem Steel Corporation.

Glen D. Huff, Oklahoma City, Okl. (Earl D. Mills and David W. Edmonds of Foliart, Mills & Niemeyer, Oklahoma City, Okl., was with him on brief), for defendant-appellee, Bethlehem Singapore Private Limited.

Before SETH, Chief Judge, MARKEY *, Chief Judge, and HOLLOWAY, Circuit Judge.

HOLLOWAY, Circuit Judge.

These appeals challenge orders granting a summary judgment in favor of defendant Bethlehem Steel Corporation (hereinafter referred to as Bethlehem Steel) and granting a motion to dismiss, plea to the court's jurisdiction and request to quash improper service of process in favor of defendant Bethlehem Singapore Private Limited (hereinafter referred to as Bethlehem Singapore).[1]

This action was brought by the plaintiffs-appellants Bill and Betty Luckett for injuries sustained by Mr. Luckett when a crane cable snapped on board a drilling rig in Singapore on March 15, 1975. Mr. Luckett was employed at the time by Transworld Drilling Company, a subsidiary of Kerr-McGee. His complaint alleged that he was engaged in directing the loading of equipment onto the drilling rig when a crane cable snapped and the crane's boom fell on top of him, fracturing his skull, ribs and spinal column, as well as causing other injuries. Mr. Luckett asserted that he was permanently paralyzed from the waist down as a result, and sought damages for past and future medical expenses, loss of earnings and earning capacity, and for pain and suffering. Mrs. Luckett sued for damages for loss of services, security and companionship of her husband.

The plaintiffs originally sued only Bethlehem Steel, but subsequently amended the complaint on March 2, 1976, to add its subsidiary, Bethlehem Singapore, as a defendant, essentially claiming that both defendants were liable for the negligence resulting in the injuries. Bethlehem Singapore's motion to dismiss, plea to the court's jurisdiction, and request to quash improper service of process asserted lack of in personam jurisdiction over that foreign corporation. Bethlehem Steel's motion for summary judgment denied liability for any negligence of the separate subsidiary corporation. The court sustained Bethlehem Singapore's motion and dismissed the claims against it, upholding its challenge to jurisdiction. The summary judgment for Bethlehem Steel upheld its denial of any liability for acts by the subsidiary, Bethlehem Singapore.

Plaintiffs appeal from both rulings, alleging several grounds of error. We will examine the arguments made against each defendant separately.

---

* Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. Although the defendants Bethlehem Steel and Bethlehem Singapore were sued in the same action below, separate appeals were brought to this court from the orders granting summary judgment as to Bethlehem Steel and dismissal as to Bethlehem Singapore. Because both appeals arise from the same cause of action, we deal with both appeals in this opinion. The record on appeal is the same for both appeals although separate briefs were filed as to each appeal.

## I

### Bethlehem Steel

Plaintiffs alleged in their complaint that Bethlehem Steel and Bethlehem Singapore had a contractual relationship whereby Bethlehem Steel agreed to furnish managerial services to Bethlehem Singapore, which services included the responsibility of insuring that Bethlehem Singapore would acquire and maintain proper facilities, adequate equipment and experienced and dependable personnel. (I.R. 141). The plaintiffs further alleged that Bethlehem Steel was negligent in failing to provide a dependable operator for the crane; that the crane operator was the employee of both Bethlehem Steel and Bethlehem Singapore; that he negligently operated the crane; and that both Bethlehem Steel and Bethlehem Singapore were negligent in knowingly using a stretched and weakened cable. (Id.).

Plaintiffs argued that Bethlehem Steel was liable for Bethlehem Singapore's actions because it exerted so much control over Bethlehem Singapore that Bethlehem Singapore was a mere instrumentality of Bethlehem Steel. Additionally, the management agreement between the two companies showed that Bethlehem Steel employees were responsible for many facets of Bethlehem Singapore's operations, including acts which led to Mr. Luckett's injuries.

In granting summary judgment, the court rejected both theories under which plaintiffs sought to hold Bethlehem Steel liable. It first held that Bethlehem Singapore was not a mere instrumentality of Bethlehem Steel and that sufficient cause did not exist to disregard the corporate entity of Bethlehem Singapore. It next held that there was no evidence that Bethlehem Steel supervised the allegedly negligent crane operator or that it participated in the hiring of the operator. The court added that even if any Bethlehem Steel employees (who were working for Bethlehem Singapore under a management agreement between the two companies) had any control over the crane operator, the employee would be a loaned servant of Bethlehem Singapore and thus Bethlehem Singapore would bear total responsibility for the employee's actions.

Plaintiffs claim there were several errors in these rulings. First, plaintiffs argue that the court erred in determining that Bethlehem Singapore was not the alter ego of Bethlehem Steel since the Management Agreement, Technical Services Agreement and License and Sales Agreement illustrate that Bethlehem Steel exerts a "maximum degree of control" over Bethlehem Singapore. Second, the court erred in holding that Bethlehem Steel was not liable for the failure of the management team to provide experienced and dependable personnel to Bethlehem Singapore. And third, the court erred in holding that even if a management team member negligently hired the crane operator, only Bethlehem Singapore would be possibly liable since management team members were loaned servants of Bethlehem Singapore.

As we examine these issues we must be mindful that "appellate courts, in assessing motions for summary judgment, must consider factual inferences tending to show triable issues in the light most favorable to the existence of these issues." *Mustang Fuel Corp. v. Youngstown Sheet and Tube Co.*, 516 F.2d 33, 36 (10th Cir.). Where different ultimate inferences may properly be drawn, the case is not one for a summary judgment. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176; *Webb v. Allstate Insurance Co.*, 536 F.2d 336, 339 (10th Cir.). Moreover, the appellate court considers a summary judgment in the same manner as the trial court since the trial court has no real discretion in determining to grant summary judgment. 6 Moore's Federal Practice ¶ 56–23, p. 56–1394; *see Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 543 (9th Cir.). We do not examine the trial court's rulings under the "clearly erroneous" standard of Rule 52, F.R.Civ.P., but instead apply the strict standard of Rule 56. *Exnicious v. United States*, 563 F.2d 418, 423 n.9 (10th Cir.); *National Aviation Underwriters v. Altus Flying Service, Inc.*, 555 F.2d 778, 781 n.6 (10th Cir.).

## A.

We turn first to the claim that Bethlehem Singapore was the alter ego of Bethlehem Steel, thus making Bethlehem Steel liable for the acts of Bethlehem Singapore. Plaintiffs say that circumstances giving rise to the execution of the contract entered into between Bethlehem Singapore and Transworld Drilling and the control which Bethlehem Steel exercised in this endeavor provide grounds for disregarding the corporate entities. Among these circumstances is the fact that Bethlehem Steel owns 100% of the stock of Bethlehem International which in turn owns 70% of the stock in Bethlehem Singapore. Bethlehem Steel has furnished 10 of the managing officers of Bethlehem Singapore, many of whom hold managerial posts in Bethlehem Steel as well.

Further plaintiffs point out that Bethlehem Steel has contracted to furnish Bethlehem Singapore with technical services and manufacturing equipment as well as locating new business for Bethlehem Singapore. A Bethlehem Steel employer, Mr. Lacey, negotiated the contract with Transworld, and after the contract was drawn up by Transworld it was sent to Bethlehem Steel's home office rather than to Bethlehem Singapore's office in Singapore. None of the negotiations were carried on through the Singapore office and Bethlehem Singapore maintains no place of business in the United States. According to the plaintiffs, these factors show that Bethlehem Steel dominates the decision making process of its subsidiary and maintains formal corporate

requirements in an attempt to evade liability. Plaintiffs also argue that injustice results from the summary judgment for Bethlehem Steel in that any judgment against Bethlehem Singapore alone would be difficult to enforce. Further, dismissal of the action as to Bethlehem Singapore will compel the plaintiffs to sue Bethlehem Singapore in Singapore since it maintains no offices in the United States.[2] (Brief of Appellants, 3–14).

Plaintiffs alternatively argue that the issue of whether the corporate entities should be disregarded is a question of fact to be determined by the jury, citing *Pacific Can Co. v. Hewes*, 95 F.2d 42 (9th Cir.), and *Worldwide Carriers, Ltd. v. Aris Steamship Co., Ltd.*, 301 F.Supp. 64, 69 (S.D.N.Y.). (Brief of Appellants, 14–20).

In granting summary judgment for Bethlehem Steel on this issue the district court applied the test set out in *Palmer v. Stokely*, 255 F.Supp. 674 (W.D.Okl.),[3] and held that Bethlehem Singapore was not a mere instrumentality of Bethlehem Steel and that sufficient cause did not exist to disregard the corporate entity of the two corporations. *Palmer v. Stokely, supra,* outlined the factors discussed in *Fish v. East*, 114 F.2d 177, 191 (10th Cir.) to consider.[4] From an examination of the uncontroverted facts demonstrated by Bethlehem Steel in support of summary judgment, we must agree with the district court on this part of its ruling, namely that Bethlehem Singapore is not a mere alter ego or instrumentality of Bethlehem Steel. The majority of the factors discussed in *Fish v. East,*

---

**2.** See Part II, infra.

**3.** We apply the law of the forum state, Oklahoma, in deciding the substantive questions concerning the summary judgment. There is no showing or contention that either plaintiffs or Bethlehem Steel have argued for the application of foreign law. See Rule 44.1, F.R.Civ.P.; *Commercial Insurance Co. of Newark v. Pacific-Peru Construction Corp.*, 558 F.2d 948, 952 (9th Cir.).

**4.** These factors include whether:
(1) The parent owns all the stock; (2) both have common directors and officers; (3) the parent finances the subsidiary; (4) the parent causes the subsidiary's incorporation; (5) the

subsidiary has grossly inadequate capital; (6) the parent pays salaries or expenses of the subsidiary; (7) the subsidiary has no business except with its parent or subsidiary corporation or no assets except those transferred by its parent or subsidiary; (8) directors and officers do not act independently in the interests of the subsidiary; (9) formal legal requirements of the subsidiary such as keeping corporate minutes are not observed; (10) distinctions between the parent and subsidiary and subsidiary and its subsidiary are disregarded or confused; (11) subsidiaries do not have full board of directors.

*supra*, are shown to be lacking, without dispute. It is necessary to establish something more than ownership of virtually all of the subsidiary stock by the parent or identity of directors in order to treat the parent and subsidiary as one. *Edgar v. Fred Jones Lincoln-Mercury*, 524 F.2d 162, 166 (10th Cir.); *see Quarles v. Fuqua Industries, Inc.*, 504 F.2d 1358 (10th Cir.).

A court will disregard the corporate entity where fraud or illegal or inequitable conduct is the result of the use of the corporate structures. *Id.*; *see Robertson v. Roy L. Morgan Production Co.*, 411 F.2d 1041, 1043 (10th Cir). And while this is a fact question which should ordinarily be submitted to the jury, it need not be submitted if the evidence discloses no real question of fact. *Edgar v. Fred Jones Lincoln-Mercury, supra.* There is no showing of fraud or inequitable conduct resulting from the use of the corporate structures in this case. We do not feel that the possible difficulty of enforcing a judgment against Bethlehem Singapore alone or the possible inconvenience to plaintiff (and resulting convenience to Bethlehem Singapore) in suing Bethlehem Singapore in another forum is the type of injustice which warrants piercing the corporate veil. Hence we hold that Bethlehem Steel is not liable on the theory that Bethlehem Singapore was its mere instrumentality or alter ego.[5] *Cf. Rea v. An-Son Corp.*, 79 F.R.D. 25 (W.D.Okl.), (disregarding corporate entities on the basis of the same considerations as applied to the facts of that case).

### B

Apart from the alter ego or mere instrumentality theory, plaintiffs also argue that there are further grounds for direct liability by Bethlehem Steel to them. Plaintiffs claim that Bethlehem Steel is liable directly because of the acts of its officers as a management team at Bethlehem Singapore and the duties undertaken to persons such as plaintiff, *see* Restatement (Second) of Torts § 324A; that in addition Bethlehem Steel is liable under respondeat superior principles for the acts and omissions of its own personnel, despite Bethlehem Singapore's separate corporate status; that all the circumstances surrounding the Management Services Agreement and other agreements and Mr. Lacey's deposition raised a factual issue as to Bethlehem Steel's involvement and possible liability; and that the court erred in holding that Bethlehem Steel could not be liable because its personnel were servants loaned to Bethlehem Singapore.

Bethlehem Steel responds that plaintiffs have failed to produce any evidence that any member of the management team was in any way responsible for the actions of the crane operator, and that in fact the affidavits submitted by Bethlehem Steel show that the day to day affairs of Bethlehem Singapore were conducted by employees of Bethlehem Singapore. Bethlehem Steel says that plaintiffs' arguments about Mr. Lacey's responses are misleading and that, taken in context, they show that while management team members may ordinarily be in charge of employment practices, in this case a Bethlehem Singapore employee was responsible for such duties, and that Bethlehem Steel could not be liable for the acts of servants loaned to Bethlehem Singapore.

We must examine the Management Agreement between the two companies, the affidavits submitted by Bethlehem Steel, and the deposition of Mr. Lacey. The Man-

---

**5.** The factual situation at bar is different from that found in *Vaughn v. Chrysler Corporation*, 442 F.2d 619 (10th Cir.), *cert. denied*, 404 U.S. 857, 92 S.Ct. 106, 30 L.Ed.2d 98 in which we held the parent corporation liable for defective mechanical work on a truck which was performed by a wholly owned subsidiary, even though we recognized that the separate corporate organizations of the two companies were in no way sham. In that case we said:

> We can see no real reason why the liability of the *primary manufacturer* should be defeated by an integrated corporate financial structure established and totally controlled by the primary manufacturer. 442 F.2d at 622 (emphasis supplied).

Thus in *Vaughn* we dealt with a defective product manufactured by the defendant and rendered defective by a subsidiary of the defendant.

agement Agreement provides in pertinent part:

1. *Management Team.* Bethlehem [Bethlehem Steel] will provide for the Company [Bethlehem Singapore] from one or more of its plants in the United States of America a management team of such numbers as may be agreed between Bethlehem and the Company for the purpose of assisting the Company to carry out its operations and undertaking. . .

As and when members of the staff employed by the Company shall qualify to assume managerial functions, Bethlehem shall reduce the number of personnel assigned by it to the Company under this clause. From time to time, Bethlehem's executive personnel shall visit the plant of the Company to consult with it to give such advice as Bethlehem may deem necessary, such service to be rendered without any cost to the Company (I R. 91–92).

■ Reviewing the pertinent parts of the record in the light most favorable to appellants as we are required to do in passing upon the propriety of summary judgment, *Building Mart, Inc. v. Allison Steel*

*Manufacturing Co.,* 380 F.2d 196 (10th Cir.), we observe that the management agreement provides that Bethlehem Steel would provide management personnel for the purpose of assisting Bethlehem Singapore "to carry out its operations and undertaking," without specifying exactly what duties would be performed. Ten employees of Bethlehem Steel were furnished under the agreement and these employees occupied the highest managerial positions in Bethlehem Singapore, as is evidenced on the administrative chart reproduced in the appendix to this opinion.[6] The affidavits do contain conclusory statements that Bethlehem Steel as a corporate entity was not directly responsible for hiring and firing general employees such as a crane operator, nor did any of the management personnel furnished by Bethlehem Steel exercise any supervisory control over the methods of work of the crane operator, nor was Bethlehem Steel responsible for the day to day operations of Bethlehem Singapore.[7] However, the fact remains that Bethlehem Steel employees occupied positions within Bethlehem Singapore of Chairman of Bethlehem Sing-

---

**6.** The affidavit of John C. Estes, President and General Manager of Bethlehem Singapore, established the following pertinent facts: (1) pursuant to the Management Agreement, ten employees were furnished by Bethlehem Steel to Bethlehem Singapore; (2) these employees and their positions in Bethlehem Singapore included Mr. W. F. Williams, Chairman of its Board of Directors; Mr. R. A. Leaf, Director; Mr. G. C. Estes, President and General Manager; Mr. J. W. Bramlet, Assistant General Manager (Legal and Finance), Secretary & Treasurer, Contract Administration; Mr. G. K. Geiger, Vice President/Asst. General Manager; Mr. S. C. Perry, Asst. to General Manager and Vice President; Mr. B. E. Larimore, General Superintendent; Mr. D. Kothari, Technical Assistant and Projects Manager; Mr. D. M. Stolarski, Ship Superintendent; and Mr. J. H. Munro, Chief Engineer. (I R. 86–89).

Mr. Lacey's deposition sheds some light·on the management team furnished by Bethlehem Steel to Bethlehem Singapore. Mr. Lacey testified that a management team was necessary because the "*people who are familiar with mobile drilling platforms are pretty scarce . . .* and there was not available in Singapore people who have these capabilities. . . . *Bethlehem Singapore needed these services, and they were drawn from Bethlehem Steel's supply of them,* and it was through this agree-

ment that that was accomplished." (Lacey deposition 30). (Emphasis added).

Mr. Lacey explained that the needed expertise was "[i]n the management of the team, the management aspect of it," which "would cover materials, [and] employment problems." (Lacey deposition 32). Mr. Lacey said that the total management team would include approximately fifty people, although Bethlehem Steel only furnished a few of this total with the result that "the number of people that Bethlehem [Steel] provides doesn't get very far down." (Lacey deposition 33). Mr. Lacey acknowledged that one of the "usual functions" of management is to hire and fire employees, but said it was his belief that the man in charge of the "Industrial Relations Department" of Bethlehem Singapore was a native Singaporian and not a part of the team provided by Bethlehem Steel. (Lacey deposition 35).

**7.** Conclusory statements are insufficient to satisfy the requirements of Rule 56, F.R.Civ.P., *Morgan v. Willingham,* 424 F.2d 200, 202 (10th Cir.), especially where the statements pertain to information known only be an adverse interested party. *See National Aviation Underwriters v. Altus Flying Service, Inc.,* 555 F.2d 778, 784 (10th Cir.).

apore's Board of Directors, its President and General Manager, Vice Presidents and Assistant General Managers, Secretary & Treasurer, General Superintendent, Technical Assistant and Projects Manager, Ship Superintendent, and Chief Engineer. In view of the occupancy of all these positions with their authority, the Lacey deposition and all the surrounding circumstances, a trier of the facts hearing the witnesses might reasonably reject the disclaimer of Bethlehem Steel of involvement in Bethlehem Singapore's operations, drawing a different inference. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176.

With respect to Bethlehem Steel's liability for acts of the management personnel in question the district court stated (I R. 296):

> The Court further finds assuming arguendo one of the persons provided Bethlehem Singapore Private Limited by the Bethlehem Steel Corporation pursuant to its management agreement did have supervisory control over the allegedly negligent crane operator or was responsible for his hiring that said individual would be a loaned servant to Bethlehem Singapore Private Limited from the Bethlehem Steel Corporation and that the responsibility for his negligence in hiring or supervising the crane operator would fall on Bethlehem Singapore Private Limited as the borrowing master and not upon the Bethlehem Steel Corporation.

Plaintiffs argue that the court erred in its ruling on the loaned servant doctrine because, rather than Bethlehem Singapore directing management team members, the management team actually directed the daily business of Bethlehem Singapore. (Brief of Plaintiffs 23–27). Defendants respond that the management team is to perform the business of Bethlehem Singapore, and as such the team members were loaned servants. Defendants rely on the fact that Bethlehem Singapore was required to reimburse Bethlehem Steel for all expenses and salaries incident to the management team's continued employment with Bethlehem Steel as evidence that they were acting as loaned servants of Bethlehem Singapore. And defendants urge that plaintiffs failed to present any evidence to the court in support of its contention that the loaned servant doctrine should not apply to this case. (Brief of Bethlehem Steel, 38–42).

■ Under the doctrine of respondeat superior, a "master is subject to liability for the torts of his servants committed while acting in the scope of their employment." Restatement (Second) of Agency, § 219. Employees of corporations are deemed servants of the corporation, which is characterized as the master. *See* Restatement (Second) of Agency § 220, Comment a., § 5, Appendix. It is true that a servant may be loaned to another master to perform certain services, and thus the second master becomes liable for the servant's torts. *See* Restatement (Second) of Agency, § 227; 53 Am.Jur.2d, Master & Servant § 415. However, it is also possible for the servant to be acting as the servant of both masters, making both liable for the servant's tort. *Id.* Oklahoma law holds that "if the general employer has not resigned full control of the servant for the time during which the work is being performed, then the servant does not become the servant of the person for whom the work is performed merely because such person points out the work to the servant or gives him directions as to details of and manner of doing the work." *Smith v. Hall*, 418 P.2d 665, 669 (Okl.). In determining which master is liable, "neither payment of wages nor power to hire and discharge is controlling." *Id.* at 669; *see also Wylie Stewart Machinery Co. v. Thomas*, 192 Okl. 505, 137 P.2d 556. The controlling factor in the determination is whether the general employer has released, for the time required to perform the borrowing master's work, "*all* authority to control or direct the manner and method of the work to be done and surrendered such direction and control to the special employer." *Smith v. Hall, supra*, 418 P.2d at 669 (emphasis added); *Hodges v. Holding*, 204 Okl. 327, 229 P.2d 555, 559.

■ Bethlehem Steel relies heavily on the facts that management personnel were

required to be reimbursed by Bethlehem Singapore and that they were to perform work for the benefit of Bethlehem Singapore. (Brief of Bethlehem Steel, 38–42). Yet the Oklahoma decision in *Smith v. Hall, id.* at 669, indicates that neither payment of wages nor power to hire and discharge are determinative, with the controlling factor being which master has authority to control or direct the manner and method of the work to be done. As previously noted, the management personnel furnished by Bethlehem Steel occupied the very highest positions within management at Bethlehem Singapore because, as Mr. Lacey explained, the people familiar with the management of an operation such as Bethlehem Singapore's were scarce. Since Bethlehem Singapore needed to borrow its highest management personnel because of a lack of expertise within the company, an inference could be drawn that Bethlehem Steel in effect had substantial power to control the manner and method in which Bethlehem Singapore's operations, hiring and acquisition of equipment were conducted. As noted, the drilling rig contract with Transworld was executed for Bethlehem Singapore by its chairman, one of the management team, but at the Bethlehem Steel offices in Pennsylvania—one fact tending to support an inference of control by Bethlehem Steel.

Additionally, once their duties were undertaken by the management team from Bethlehem Steel, it could be found that Bethlehem Steel was liable for any negligence in selection of the management team and for any of their acts and omissions in carrying out duties necessary for the protection of third persons. *See Abernathy v.*

*Otis Elevator Corp.,* 533 P.2d 971, 975 (Okl.); Restatement (Second) of Torts § 324A and comment d;[8] 57 Am.Jur.2d, Negligence § 45, p. 392; *cf. Indian Towing Co. v. United States,* 350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed. 48; *Oklahoma Natural Gas Co. v. Courtney,* 182 Okl. 582, 79 P.2d 235, 241.

■■■ We cannot agree that this general issue of power of control and the actual exercise of control by Bethlehem Steel was removed as a factual issue by the depositions, affidavits and agreements. Where different ultimate inferences may properly be drawn, the case is not one for summary judgment. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176; *Webb v. Allstate Life Ins. Co.,* 536 F.2d 336, 339 (10th Cir.); *American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co.,* 354 F.2d 214, 216 (4th Cir.). We are convinced that the moving party has not demonstrated its right to summary judgment as a matter of law and beyond a reasonable doubt. *Mustang Fuel Corp. v. Youngstown Sheet and Tube Co.,* 516 F.2d 33, 36 (10th Cir.).

■■■ We also cannot accept Bethlehem Steel's assertion that plaintiffs failed to show that any act of any member of the management team constituted a failure to exercise reasonable care, so that the summary judgment was proper. (Brief of Bethlehem Steel, 37). The gist of Bethlehem Steel's position in the affidavits was not that specific acts of negligence did not occur, but that Bethlehem Steel and the management team had no responsibility for the crane's operations.[9] As noted earlier,

---

8. Illustration 3 to comment d under § 324A states:

> 3. The A Company employs B as superintendent of building construction work. One of his duties to A Company is to inspect a scaffold erected by an independent contractor, to make sure that it is safe for A Company's workmen. B negligently fails to inspect the scaffold, and as a result of its defective condition, which would have been discovered by proper inspection, the scaffold collapses and C, a workman employed by A Company, is injured. B is subject to liability to C.

9. It is made clear in the district court's order that the summary judgment was not based on the documents having shown that no negligence occurred. The order states that "[t]he reason the boom fell is in dispute, however, that is not material to this decision and suffice it to say plaintiffs allege that it fell due to the negligence of the crane operator and to a defective crane and boom lines." (I R. 292). The summary judgment was thus based on the theory that Bethlehem Steel could not be liable because of a lack of any responsibility for Bethlehem Singapore's operations, not on the absence of a showing of specific negligence.

we feel that from the record which plaintiffs did develop, this proposition might be rejected by the trier of fact. They are not to be defaulted for failure to develop evidence on other issues. The burden on the motion for summary judgment rested on Bethlehem Steel as the movant. As to any issue where the movant's documents do not establish the absence of a genuine issue of fact, summary judgment must be denied, even if no opposing evidentiary matter is presented. *See Adickes v. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142; *Sterner Aero AB v. Page Airmotive, Inc.,* 499 F.2d 709, 714 (10th Cir.).

■■■ In sum, we must hold that the liability of Bethlehem Steel on the grounds discussed above involves underlying questions of fact which remain. We cannot agree that such issues were foreclosed as a matter of law by the summary judgment papers. Accordingly that judgment must be set aside.

## II

### *Bethlehem Singapore*

As noted, plaintiffs added Bethlehem Singapore as a defendant upon learning that the crane operator was an employee of Bethlehem Singapore. (I R. 27–30). Bethlehem Singapore then moved to dismiss the action on the grounds that the court lacked in personam jurisdiction and further requested that the summons be quashed due to insufficient service of process. (I R. 38).

In essence Bethlehem Singapore argued that it was not "doing business" in Oklahoma as required by 12 Okla.Stat. § 187, 12 Okla.Stat. § 1701.03, and 18 Okla.Stat. § 1.204a; moreover, even if it were "doing business" in Oklahoma, the above mentioned jurisdictional statutes require that the cause of action must arise from the same acts which constitute "doing business"; and because the only contacts with Oklahoma involved a contract to build a drilling rig, and the cause of action arose out of a tort occurring in Singapore, this statutory requirement was not met. (I R. 39–55).

Bethlehem Singapore submitted the affidavit of John C. Estes, its President & General Manager, which stated, *inter alia,* that Bethlehem Singapore is incorporated under the laws of Singapore; maintains its principal place of business in Singapore; has two sales offices in the United States, one in Beaumont, Texas and one in New York. The affidavit further stated that Bethlehem Singapore is not licensed to do business in Oklahoma, does not have a service agent in Oklahoma and is not domesticated in Oklahoma. Further, it owns no property or assets in Oklahoma; has paid no taxes in Oklahoma; does not maintain a sales office or sales representative in Oklahoma; is not listed in any Oklahoma telephone directory and does not have a mailing address in the State. It does not advertise within the State with the exception of occasional advertisements in nationally distributed trade journals which may be distributed in Oklahoma; and it has no agents, servants or employees residing in or permanently assigned to the State of Oklahoma.

The affidavit also said that the only contract negotiated by Bethlehem Singapore in Oklahoma was the September 28, 1973, contract with Transworld Drilling for a drilling rig, and that Bethlehem Singapore does not actively and regularly enter the State to solicit business but that any business dealings occurring in whole or in part in Oklahoma are initiated from Oklahoma by the prospective customer. (I R. 57–59). Answers to interrogatories submitted to Bethlehem Singapore by the plaintiffs corroborated many of these statements (I R. 173–179), although Bethlehem Singapore did state in its answers that it had never applied for a certificate to engage in the transaction of business in any state in the United States, while stating in the affidavit that it has two sales offices in the United States. (I R. 57, 174).

In response to Bethlehem Singapore's motion, plaintiffs argued that the defendant was indeed "doing business" in Oklahoma by virtue of the fact that it has negotiated some fifteen million dollars worth of contracts with Transworld Drilling, of which

seven million dollars involved the rig on which Mr. Luckett was working at the time he was injured. Plaintiffs note that Mr. Lacey, an employee of Bethlehem Steel who negotiated the contract between Bethlehem Singapore and Transworld Drilling, came to Oklahoma approximately twice a year over the last five years on behalf of his employer.

Plaintiffs also responded to the contention that their cause of action did not arise out of defendant's business activities within the State. Plaintiffs argue that Bethlehem Singapore came to Oklahoma to negotiate a business venture, i. e. the manufacture and delivery of a drilling rig. Upon execution of the contract, defendant began performance of the contract. And through its negligent performance of the contract, Mr. Luckett suffered injury. Plaintiffs concede that "in the legal sense" the cause of the injury was not the contract, but "the cause of action resulted from the legal relationship arising from the defendant's purposeful activities within this State."

As a third proposition, plaintiffs argued that the presence of the parent corporation, Bethlehem Steel, within the forum subjects Bethlehem Singapore to in personam jurisdiction. Because of the relationship between the two corporations, including the fact that Bethlehem Steel is authorized to conduct business in the State on behalf of Bethlehem Singapore, subjecting the subsidiary to jurisdiction due to the activities of Bethlehem Steel does not offend "traditional notions of fair play and substantial justice." Other factors in support of the presence theory include the fact that Mr. Lacey, an employee of Bethlehem Steel, negotiated the contract between Bethlehem Singapore and Transworld Drilling. The contract was signed in Bethlehem, Pennsylvania by Mr. W. F. Williams, Chairman of the Board of Directors for Bethlehem Singapore and Vice President of Shipbuilding for Bethlehem Steel. Finally, plaintiffs argued that "justice required that the court exercise in personam jurisdiction." Pointing out that the Oklahoma Supreme Court has stated that the exercise of jurisdiction over foreign corporations may be exercised

to the fullest extent permissible by the due process requirement, plaintiffs argued that Oklahoma has the most substantial interest in the litigation of any forum in the Untied States since the plaintiffs are Oklahoma residents. Thus, in light of its substantial contacts with Oklahoma, the court should exercise jurisdiction over Bethlehem Singapore (I R. 215–245).

The district court sustained Bethlehem Singapore's motion and dismissed the plaintiffs' cause of action against Bethlehem Singapore. The court found that the plaintiffs failed to demonstrate facts which constitute "doing business" on the part of Bethlehem Singapore because, rather than any indication of substantial, continuous and regular activity within the State, the evidence demonstrates only one transaction within the State. The court then held that assuming arguendo that Bethlehem Singapore was "doing business" in Oklahoma, the plaintiffs' evidence still failed to meet the requirements of the statutes in that 12 Okla.Stat. § 187 and § 1701.03 require that plaintiffs' cause of action arise out of the same acts of the defendant which are alleged to confer in personam jurisdiction of the defendant. Because the cause of action was based on a negligently caused accident in Singapore, the cause of action did not arise out of Bethlehem Singapore's actions in Oklahoma. Finally, the court held that even if 18 O.S. § 1.204a provides a broader basis for exercising in personam jurisdiction, there was no evidence to demonstrate that the alleged business contacts of Bethlehem Singapore with Oklahoma continued beyond September 1973 when the contract between Bethlehem Singapore and Transworld Drilling was executed (I R. 286–288).

On appeal the plaintiffs argue several points. They first say that the court erred in finding that Bethlehem Singapore had a sales office in Beaumont, Texas. Plaintiffs feel that such a finding was especially detrimental because, while unstated by the court, the court presumed that this action could be brought in Texas even if it were dismissed here. If there is no such office in

Texas, as the deposition of Mr. Lacey seems to indicate, there is no other United States forum in which to bring the lawsuit. Plaintiffs apparently maintain that had the court correctly determined that Bethlehem Singapore did not have a sales office in Texas, it would not have dismissed the action. (Brief of Appellants, 4–7).

Plaintiffs next make two arguments related to the court's determination that Bethlehem Singapore was not "doing business" in Oklahoma. They argue that the court erred in finding that Bethlehem Singapore did not actively and regularly enter Oklahoma to solicit business and that it had no agents, servants or employees who reside in or are permanently assigned to Oklahoma. They assert that Mr. Lacey's deposition shows that he transacted business on behalf of Bethlehem Steel and Bethlehem Singapore and that he regularly came to Oklahoma to transact business. Additionally plaintiffs argue that the court erred in finding that there was no substantial, continuous and regular activity within the State by Bethlehem Singapore since the enormity of the contract between Transworld and Bethlehem Singapore requires a relaxation of the normal requirements of continuity and regularity. And because Oklahoma courts have construed their long arm statutes to extend to the fullest extent permissible by due process, Bethlehem Singapore has sufficient minimum contacts to constitute "doing business" within Oklahoma and thus be subject to in personam jurisdiction. (Brief of Appellants, 8–18).

Plaintiffs argue as a fourth proposition that the court erred in finding that 12 Okla. Stat. §§ 187 and 1701.3 require that the plaintiffs' cause of action arise out of the same acts of the defendant which are alleged to confer in personam jurisdiction. They contend that these statutes are restricted only by the due process requirement and the United States Supreme Court has stated that it is permissible for a state to exercise in personam jurisdiction over a defendant for actions which are not based on the defendant's contacts with the State. Thus Oklahoma could permissibly exercise jurisdiction in this case. (Brief of Appellants 18–25).

Plaintiffs say the claim arose from Bethlehem Singapore's contacts with the State when viewed within the "principles of fair play and substantial justice." Plaintiffs reason that if Transworld had not contracted with Bethlehem Singapore for the manufacture of a drilling rig, Mr. Luckett would not have been on the drilling rig in Singapore and hence would not have been injured. While not "arising from" the contract in a strict legal sense, there is a sufficient connection, plaintiffs say, between the tort and the defendant's contacts with the State to fulfill constitutional requirements and thus to exercise in personam jurisdiction. (Reply Brief of Appellants 7–10).

Finally, plaintiffs say the court erred in construing 18 Okla.Stat. § 1.204a by holding that jurisdiction was impermissible because none of the alleged business contacts of Bethlehem Singapore with Oklahoma continued beyond September 1973. They contend that a corporation cannot escape service of process for a cause of action growing out of or based upon any business done by it in the State at any time. (Brief of Appellants 25–27).

 In reviewing the dismissal as to Bethlehem Singapore we are mindful that federal due process neither prohibits a state from opening its courts to a cause of action not arising out of a foreign corporation's activities in the forum state, nor does due process compel a state to entertain such an action, *Perkins v. Benguet Mining Co.*, 342 U.S. 437, 446, 72 S.Ct. 413, 418, 96 L.Ed. 485. The question whether a foreign corporation is subject to in personam jurisdiction in a diversity action is determined in accordance with the law of the state in which the federal court sits. *Sumners v. Continental Copper & Steel Industries, Inc.*, 445 F.2d 141, 142 (10th Cir.). The test for exercising long-arm jurisdiction in Oklahoma is to de-

termine first whether the exercise of jurisdiction is authorized by statute and, if so, whether such exercise of jurisdiction is consistent with constitutional requirements of due process. *Timberlake v. Summers,* 413 F.Supp. 708, 710 (W.D.Okl.); *World-Wide Volkswagen Corp. v. Woodson,* 585 P.2d 351, 352–353 (Okl.); rev'd on other grounds, —— U.S. ——, 100 S.Ct. 559, 62 L.Ed.2d 490. We conclude that the applicable Oklahoma statutes do not authorize in personam jurisdiction over Bethlehem Singapore and thus it is unnecessary to reach the constitutional question.

The Oklahoma statutes which authorize in personam jurisdiction over a foreign corporation include 12 Okla.Stat. §§ 187 and 1701.03 [10] and 18 Okla.Stat. § 1.204a.[11] We agree with the district court that the first two statutes and part of 18 Okla.Stat. § 1.204a require that the cause of action must arise from the acts of the defendant [12] which give the court jurisdiction, *e. g.* transacting business in the state.[13] *Milligan v. Anderson,* 522 F.2d 1202 (10th Cir.); *George v. Strick Corporation,* 496 F.2d 10 (10th Cir.); *Bruce v. Fairchild Industries, Inc.,* 413 F.Supp. 914 (W.D.Okl.); *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48,

53 (Okl.); *Roberts v. Jack Richards Aircraft Co.,* 536 P.2d 353–355 (Okl.). We cannot accept plaintiffs' contention that, while the cause of action did not arise from defendant's acts in Oklahoma in the legal sense, there is sufficient connection between the two to fulfill due process requirements and sustain jurisdiction. Such an assertion confuses the constitutional requirements with the more stringent requirements of the Oklahoma statutes. We reiterate our statement in *George v. Strick Corporation* that these statutes "authorizes *in personam* jurisdiction to the outer limits of due process *when and only when the asserted cause of action arises from the defendant's activities within the state."* 496 F.2d at 13. That such an interpretation is a correct one was made clear by the Oklahoma Court in *Roberts v. Jack Richards Aircraft Co., supra,* 536 P.2d at 355:

> If the jurisdiction is bottomed on "doing business within the State," then . . . [12 Okla.Stat. §§ 187 and 1701.03, and 18 Okla.Stat. § 1.204a] require the cause of action to accrue from such acts.

*See Glidewell Motors, Inc. v. Pate,* 577 P.2d 1290, 1292 (Okl.); *Hudson v. Hudson,* 569 P.2d 521 (Okl.App.).

> In all cases *where a cause of action has accrued or shall accrue to any person by reason of a foreign corporation doing business in this state or having done business in this state or while a foreign corporation was doing business within this state* and such foreign corporation has no registered agent in this state upon whom service of summons or other process may be had, an action may be filed against such foreign corporation in any county in the state and service of summons or other process may be had upon the Secretary of State, and such service shall be sufficient to give jurisdiction of the person to any court in this state having jurisdiction of the subject matter whether sitting in the county where the Secretary of State is served or elsewhere in the state. (Emphasis added).

---

**10.** 12 Okla.Stat. § 187 provides in pertinent part:

> (a) Any person, firm, or corporation other than a foreign insurer licensed to do business in the State of Oklahoma whether or not such party is a citizen or resident of this State and who does, or who has done, any of the acts hereinafter enumerated, whether in person or through another, submits himself, or shall have submitted himself, and if an individual his personal representative, to the jurisdiction of the courts of this State *as to any cause of action arising, or which shall have arisen, from the doings of any of said acts:*
> (1) the transaction of any business within this state; . . . (Emphasis added).

12 Okla.Stat. § 1701.03 provides in pertinent part:

> (a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, *as to a cause of action or claim for relief arising from the person's:*
> (1) transacting any business in this state;
> . . . (Emphasis added).

**11.** 18 Okla.Stat. § 1.204a provides:

**12.** As to the possible broader applicability of 18 Okla.Stat. 1.204a, see discussion *infra.*

**13.** Plaintiffs do not raise any issue as to whether any other acts of the defendant as enumerated under 12 Okla.Stat. §§ 187 and 1701.03 might give rise to jurisdiction.

Because we feel that these statutes clearly require that the plaintiffs' cause of action must arise out of Bethlehem Singapore's acts within the state, and because it is clear that the tortious injury alleged by Mr. Luckett did not in any legal sense arise out of the contract negotiations carried on in Oklahoma between Transworld Drilling and Bethlehem Singapore, we need not decide whether the district court correctly determined that Bethlehem Singapore was not "doing business" within the state.[14] Nor do we decide whether the court correctly determined that Bethlehem Singapore has a sales office in Texas inasmuch as this determination could not affect the court's decision. Regardless of whether this action could be brought in another forum, the court was required to follow the Oklahoma statutes in determining personal jurisdiction and could not disregard such statutes even if the result would be that plaintiffs could not bring suit in another forum. As noted earlier, due process does not compel the states to exercise jurisdiction. *Perkins, supra,* 342 U.S. at 446, 72 S.Ct. at 418.

■ We turn finally to the trial court's discussion of 18 Okla.Stat. § 1.204a and its possibly broader scope. *See Rea v. An-Son Corp.,* 79 F.R.D. 25, 32 (W.D.Okl.). We feel that the district court in essence held that, if this statute is broad enough to allow in personam jurisdiction for *any* cause of action arising while the defendant is doing business and thus present in the State, jurisdiction was still not warranted here because defendant's last contacts with the State ceased over a year before the plaintiffs' cause of action arose. *Cf. Garrett v. Levitz Furniture Corporation,* 356 F.Supp.

283, 284–85 (N.D.Okl.) (jurisdiction held defective where claim accrued before corporate acts in Oklahoma). We agree with the district court that if the broader interpretation of the statute is correct, nevertheless it does not apply in this case since the last contacts with Oklahoma by or on behalf of Bethlehem Singapore were in 1973.[15]

Although the plaintiffs do not raise the issue on appeal, as noted earlier they argued in the trial court that Bethlehem Singapore was "present" within Oklahoma and thus subject to in personam jurisdiction on the basis of the presence of Bethlehem Steel, which negotiated contracts for Bethlehem Singapore. While not addressing this issue specifically in its order, the court necessarily rejected it in granting the motion to dismiss. We note that the evidence indicated that the last business negotiated in Oklahoma on behalf of Bethlehem Singapore was in 1973. Even if Bethlehem Steel was authorized to negotiate on behalf of Bethlehem Singapore beyond that point, we do not feel that this is determinative inasmuch as no business was actually conducted on behalf of Bethlehem Singapore beyond 1973. *See Roberts v. Jack Richards Aircraft Co., supra,* 536 P.2d at 355. Hence we do not feel that the plaintiffs established Bethlehem Singapore's "presence" in the State after 1973.

Accordingly, the order of the district court dismissing the action against Bethlehem Singapore for lack of in personam jurisdiction is affirmed. For reasons stated earlier the summary judgment in favor of Bethlehem Steel is vacated and that cause is remanded for further proceedings.

IT IS SO ORDERED.

---

**14.** Hence we do not decide whether "doing business" requires activities which are substantial, continuous and regular, *Anderson v. Shiflett,* 435 F.2d 1036, 1037 (10th Cir.); *Curtis Publishing Company v. Cassel,* 302 F.2d 132, 135 (10th Cir.), the test which was applied by the district court, or whether a lesser showing is enough, as indicated in *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48, 53 (Okl.), and *B. K. Sweeney Co. v. Colorado Interstate Gas Co.,* 429 P.2d 759, 762 (Okl.).

**15.** We do not address the issue of the validity of the service provisions of 18 Okla.Stat. § 1.204a, discussed in *Rose v. K. K. Masutoku Toy Factory Co.,* 597 F.2d 215, 219–220 (10th Cir.), in view of the disposition of this case and inasmuch as it was not raised either in the district court or on appeal.

# APPENDIX

EXHIBIT "A"

**BETHLEHEM SINGAPORE PRIVATE LIMITED**
**ADMINISTRATIVE AND OPERATING PERSONNEL**

BOARD OF DIRECTORS
W F WILLIAMS – CHAIRMAN
LAU C.S. YONG P.H.
R.A. LEAF Y.C WONG

PRESIDENT
AND
GENERAL MANAGER
J.C. ESTES

ASST. GENERAL MANAGER
(LEGAL AND FINANCE)
SECRETARY AND TREASURER
CONTRACT ADMINISTRATION
J.W BRAMBLET

G. K. GEIGER
VICE PRESIDENT/
ASST. GENERAL MANAGER

TO
ASST/GENERAL MANAGER
VICE PRESIDENT
S.C. PERRY

— SALES

—— ACCOUNTING
LOW S.F. – CHIEF
ACCOUNTANT

TECH. ASST &
PROJECTS MGR.
D J. KOTHARI

SHIP SUPERINTENDENTS
LER H S
D. STOLARSKI
TAN A.H.
MAH H L
TAN Y.L.
F. YEO

— ENGINEERING
J.H. MUNRO – CHIEF ENGR
LEE C.M. – ASST CHIEF ENGR

— FACILITIES
R LIM – CHIEF FACILITIES
ENGINEER
TEO S T.
GOH M M

— PLANNING
H.H. STEWART SUPT.
CHIEF PLANNERS
M YONG – MAT'L
V. LACHICA – PROD.

— ESTIMATING
E. TAN – CHIEF ESTIMATOR

— PERSONNEL
WONG Y.M – MGR
G LIM – ASST MGR.
G GOPAL – CHIEF SECURITY
A. LEE – SAFETY OFFICER

— PURCHASING
A.J. WILTON – MGR.
GAN T.K. – ASST. MGR

— STORES
ALIAS B.Y. – CHIEF
MAT'L CONTROLLER

GENERAL SUPERINTENDENT
B.E LARIMORE

— SHIPFITTING
BURNING
S.H WONG – SUPT
TAI A.C. – ASST. SUPT.
P THAM – ASST TO SUPT

— WELDING
KOH C H. – SUPT.
LIM K H – ASST. SUPT.

— CARPENTER
R. SKINNER – SUPT.
HO C K. – ASST. SUPT.
C. GOODENOUGH

— RIGGING
R. SKINNER – SUPT.
HO C.K. – ASST. SUPT
LOH K L.

— ELECTRICAL
G J STEVENS – SUPT.
T LEONG – ASST. SUPT.

— MACHINERY
WONG H.P. – SUPT,
LEW H S

— PAINT & LABOR
R. WONG – SUPT.
J.J HENDRICKS

— PIPE
CHOW K W. – SUPT.
CHONG C.T.

— NIGHT SUPT
R. GAN – SUPT.
LEONG C.H. – ASST. SUPT.

MARCH 15, 1975.