Leslie Paul REA, Plaintiff,

v.

AN–SON CORPORATION, An-Son Drilling, S. A., and An-Son Drilling Corporation, in personam, and the TENDER GP–8, her Tackle, Equipment, etc., in rem, Defendants.

No. CIV–77–0700–T.

United States District Court,
W. D. Oklahoma.

March 31, 1978.

M. Kenneth Woodward, Jr. and Freeman M. Bullock, Houston, Tex., Gordon L. Briscoe, Brownsville, Tex., Robert L. Wheeler, Oklahoma City, Okl., for plaintiff.

W. Garney Griggs, Ross, Griggs & Harrison, Houston, Tex., Robert H. Alexander, Jr., Ben L. Burdick, Charles W. Mooney, Jr. and H. Leonard Court, of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl., for defendants.

## ORDER

THOMPSON, District Judge.

Plaintiff herein is a Texas citizen who was injured while working aboard a drilling tender vessel (Tender GP–8) in Lake Maricaibo, Venezuela. Plaintiff's injuries occurred on February 28, 1974, as he was aboard the Tender GP–8 to sample the drilling mud. While plaintiff was positioned on a crosswalk above the mud pit, which contained approximately 1,000 barrels of drilling mud at a temperature of 200° F., the vessel lurched violently and plaintiff was propelled over the railing into the mud pit. Plaintiff sustained injury, and alleges that his injuries were caused by the unseaworthiness of the Tender GP–8 and the negligence of An-Son Drilling, S.A.

The defendants in this suit are the Tender GP–8, in rem; An-Son Corporation, a Delaware corporation with its principal place of business in Oklahoma; An-Son Drilling Corporation, a Delaware corporation with its principal place of business in Oklahoma; and An-Son Drilling, S.A., a Venezuela corporation with its principal place of business in Venezuela. Plaintiff alleges that An-Son Drilling, S.A. is the alter ego of An-Son Corporation and/or An-Son Drilling Corporation, and all are liable to plaintiff for his damages. (Hereafter in this order, unless otherwise specified, "defendants" refers to the defendants in personam only.) Jurisdiction of the Court is claimed under admiralty and maritime jur-

isdiction, Rule 9(h), Federal Rules of Civil Procedure.

## History of Case

Plaintiff's original complaint was filed in the Southern District of Texas, Houston Division, on December 23, 1975. The defendants in that action were An-Son Corporation, in personam, and Tender GP–8, in rem. Plaintiff's first amended original complaint, filed February 25, 1976, added An-Son Drilling, S.A. as a party defendant. An-Son Corporation and An-Son Drilling, S.A. answered on January 19, 1977. In June of 1977, Motions to Dismiss were filed on behalf of both defendants, and additionally, defendant An-Son Corporation requested dismissal for improper venue or, in the alternative, to transfer for forum non conveniens to the Western District of Oklahoma. Plaintiff responded, objecting to all motions of defendants. The case was transferred to the Western District of Oklahoma by order dated July 12, 1977. None of the remaining motions were ruled on.

On September 16, 1977, plaintiff filed his second amended complaint, adding An-Son Drilling Corporation as an additional party defendant. An-Son Corporation answered plaintiff's second amended complaint on November 23, 1977, and on December 2, 1977, the remaining defendants filed Motions to Dismiss, which are the subject of this order. Plaintiff has subsequently filed a third amended complaint, which does not change the substance of his suit, but alleges facts in opposition to defendant S.A.'s defense of laches.

Defendant An-Son Drilling Corporation has filed a Motion to Dismiss as against it, charging that plaintiff's suit is barred by laches. An-Son Drilling, S.A., has filed a Motion to Dismiss for lack of subject matter jurisdiction, lack of jurisdiction over the person, insufficiency of process, and insufficiency of service of process.

## Identification of Defendants

The defendants to this suit are related businesses with similar names and the confusion stemming from this situation seems to be the principal issue in these motions. As an aid to the discussion on the individual motions, it is perhaps advisable to identify these entities at the outset. The deposition of Carl B. Anderson, Jr., president of all three defendants, was taken May 20, 1977, and from this deposition, a summary of the An-Son companies may be drawn as follows.

The Anderson-Carey Drilling Company, formed in 1947 by Carl B. Anderson, Sr., became An-Son Drilling Company in 1951, and was later dissolved. An-Son Corporation was incorporated in Delaware in 1962. An-Son Corporation organized International Services & Supply Corporation in 1966, which later became An-Son Drilling Corporation, an Oklahoma corporation, in 1971. An An-Son Drilling *Company,* organized in 1969, was apparently dissolved. Another An-Son Drilling Corporation, incorporated in Delaware, was organized in 1973, and the Oklahoma corporation of the same name merged with it. At this point, An-Son Corporation wholly owned An-Son Drilling Corporation, but the corporation's intention was to entirely separate the two. (This intended separation will be discussed further in connection with An-Son Drilling, S.A.'s Motion to Dismiss.) An-Son Drilling, S.A., formerly B & B Drilling Company, is a Venezuela corporation, doing business solely in Venezuela. An-Son Corporation initially owned all the stock of An-Son Drilling, S.A., but eventually An-Son Drilling Corporation became the parent of An-Son Drilling S.A. Carl B. Anderson, Jr., was at all times relevant to this case the president of the three An-Son Companies which are defendants herein.

From henceforth in this discussion, unless more specifically identified, "Corporation" refers to An-Son Corporation; "Drilling", refers to An-Son Drilling Corporation; and "S.A." refers to An-Son Drilling, S.A.

## Drilling's Motion to Dismiss

Drilling became a party defendant to this action, by virtue of plaintiff's second amended complaint, in September, 1977, approximately three' and a half years after

plaintiff was injured, Drilling asserts in its Motion to Dismiss that the action against it is barred by laches.

Although an admiralty case is not an action in equity, laches is one of the equitable principles which is applied in admiralty. Where no federal statute of limitations is applicable, admiralty courts often apply the state statute of limitations for analogous claims to determine whether there has been a sufficient delay to invoke the defense of laches. *Czaplicki v. S. S. Hoegh Silver Cloud*, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956). The Oklahoma statute of limitations would prevent plaintiff's suit against Drilling two years after the injury; however, the mechanical application of the state limitations period does not end the inquiry into the defense of laches.

Plaintiff and Drilling devote a good portion of their respective briefs to the minority and majority views of the proper application of the state statute of limitations to suits in admiralty. Defendant claims that the passing of the state limitations period creates a *presumption* that plaintiff is barred by inexcusable delay and prejudice to defendant, which plaintiff may overcome only by showing facts either to excuse the delay or demonstrate lack of prejudice to defendant. Plaintiff, on the other hand, argues that the better view is that no presumption arises, rather that the determination as to the defense of laches should be made only upon considering all the circumstances. There is, understandably, very little case precedent in either the Western District of Oklahoma or the Tenth Circuit concerning issues in admiralty. Without adopting either view summarized above, the Court holds that plaintiff's suit against Drilling is not barred by laches.

Plaintiff originally filed suit against Corporation in December, 1975, well within the limitations period. On advice of opposing counsel, plaintiff added S.A. by amended complaint before any responsive pleadings were filed. (First amended complaint, February, 1976.) Neither defendant answered or filed any responsive pleading until January, 1977, more than one year after plaintiff's suit was instituted. Plaintiff's interrogatories and request for productions, filed October, 1976, have not yet been answered, at least as of record. The parties' briefs and affidavits contain various allegations, rebuttals, and explanations of these delays, and while the Court certainly intends no comment as to the actions and tactics of the attorneys for these parties or the practice before the Southern District of Texas, the Court can and does hold that plaintiff's delay in bringing suit against Drilling is excusable in light of the other defendants' actions since the institution of suit. The affidavit of the attorney for Corporation and Drilling for the Texas suit states that plaintiff acquiesced in many extensions of time, and was fully aware of the new motion practice instituted in the Southern District of Texas which necessitated further delay, and was also aware of the substance of defendants' response well before it was finally filed. Furthermore, defense attorney states that he personally delivered the documents requested by plaintiff on March 1, 1977, and made Carl B. Anderson, Jr. available for deposition on May 20, 1977. Drilling contends in its brief on this motion that plaintiff did not even attempt discovery until seven months after the Oklahoma statute of limitations had run, and that the interrogatories were phrased so that even had they been answered the day they were served, plaintiff would not have discovered the existence of Drilling. In view of plaintiff's difficulty in getting a response to his complaint, it would be an absurdity to hold that plaintiff's delay in discovery was inexcusable. Furthermore, plaintiff did inquire in his interrogatories to S.A., numbered 10 and 11, as to the ownership of S.A. As there are no answers to these interrogatories yet, it is impossible to determine whether or not these answers would have revealed the existence of Drilling. In any event, plaintiff was not the cause of the delay and it cannot be characterized as inexcusable.

Unquestionably, plaintiff discovered Drilling's existence and capacity at the dep-

osition of Carl B. Anderson, Jr. on May 20, 1977. Plaintiff did not amend his complaint to add Drilling as a defendant until September, 1977. In the interim, Corporation and S.A. filed Motions to Dismiss and plaintiff responded. Apparently at this juncture, plaintiff was willing to take his chances against the original two defendants. However, the case was transferred in July to this District, over plaintiff's strenuous and well-voiced objections. After transfer to this Court, plaintiff was in effect starting all over again, and it is not surprising that he elected to bring in Drilling as a party to the suit, as the case would be inevitably delayed by docket priorities. The existence of laches is a question addressed to the discretion of this Court, *Czaplicki v. S. S. Hoegh Silver Cloud,* supra, and the Court holds that plaintiff's two month delay from the time of transfer to his second amended complaint was not unreasonable, and all previous delays were entirely excusable.

As further reason for overruling Drilling's Motion to Dismiss, it is apparent that no prejudice has resulted to it from plaintiff's delay. Drilling's officers and directors are substantially the same as those of the other defendants, and they had ample notice of the institution of suit, including the nature of the claim, witnesses, and tangible evidence. The Court can find no prejudice resulting to Drilling, nor has Drilling attempted to show any. Under either view of the defense of laches, i. e., whichever party properly has the burden of showing an excuse for delay and prejudice to the defendant, the plaintiff here is not barred from suit against Drilling, as his delay was excusable and defendants have suffered no prejudice. Defendant An-Son Drilling Corporation's Motion to Dismiss is therefore denied.

### S.A.'s Motion to Dismiss

S.A. is a Venezuelan corporation doing business solely in Venezuela. S.A. contends, in its Motion to Dismiss, that the Oklahoma long-arm statute cannot reach S.A. to enable this Court to exercise personal jurisdiction over it. Plaintiff contends that S.A. is merely an extension of Corporation or Drilling, or both, and that jurisdiction over Corporation and Drilling enables jurisdiction over S.A., regardless of where plaintiff's cause of action arose.

Rather than setting out the Oklahoma statutes for jurisdiction and venue over foreign corporations in full, the Court will simply summarize by saying that no Oklahoma statute may be used to gain jurisdiction over S.A. as a separate and autonomous entity. To find jurisdiction, venue, and process proper as to S.A., the Court must find that S.A. is the "alter ego" of either Drilling or Corporation, over whom this Court's jurisdiction is not questioned.

■ As a general rule, the fact that a corporation owns all or a majority of the stock of another corporation does not destroy the identity of the latter as a distinct legal entity, and the fact that the stockholders or officers in two corporations may be the same persons does not operate to destroy the legal identity of either corporation. On the other hand, the notion of a separate corporate existence of parent and subsidiary or affiliated corporations will not be recognized where one corporation is so organized and controlled and its business conducted in such a manner as to make it merely an agency, instrumentality, adjunct, or alter ego of another corporation and the separate corporate identity of two corporations will not be extended to permit one of the corporations to evade its just obligations or to promote fraud or illegality or injustice. Upon disregard of the corporate entity, the parent corporation may be held liable for the acts of the subsidiary. *Taylor v. Standard Gas & Electric Co.,* 96 F.2d 693 (10th Cir. 1938), rev'd on other grounds, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669; *Palmer v. Stokely,* 255 F.Supp. 674 (W.D.Okl.1966). By the same reasoning, the acts of the parent corporation may be imputed to the subsidiary for purposes of personal jurisdiction.

The factors to be employed by this Court to determine whether a subsidiary is a mere instrumentality of a parent corporation are

defined in *Palmer v. Stokely,* supra. These factors define the standard for holding the parent liable for the acts of the subsidiary. This is not the inquiry necessary for the Court's decision today, but these factors are helpful in the determination as to personal jurisdiction. The application of the facts of this case to those factors, are as follows.

1. Parent owns all stock of subsidiary. For a number of years, S.A. was a wholly-owned subsidiary of Corporation. By the time of the accident in question in February, 1974, Corporation had transferred record ownership of the capital stock of S.A. to another wholly-owned subsidiary, Drilling, then effected a spin-off of the Drilling stock to Corporation shareholders. Thus, S.A. was wholly-owned by Drilling, which was wholly-owned by Corporation.

2. Common directors and officers. As previously discussed, Carl B. Anderson, Jr. is the president of Corporation, Drilling, and S.A. With but one exception, the officers of Corporation are the officers of Drilling and S.A. The only director or officer not common to all three companies is the superintendent of the Tender GP–8, a Venezuelan citizen. Apparently, under Venezuelan law, it is necessary for S.A. to have a local director who would be legally able to perform ministerial functions in Venezuela. With this necessary exception, the officers and directors of the three corporations are the same, and for all practical purposes, the requirement of common directors and officers has been met.

3. Parent finances subsidiary. For many years, S.A. continued to stay in business only by virtue of advances made by Corporation to cover S.A.'s operating losses. After the spin-off was effective, sometime in 1973, S.A. continued to be heavily indebted to Corporation, and Corporation has guaranteed at least one sizeable loan to S.A. from Corporation's Texas bank, since the spin-off in 1973.

4. Parent causes subsidiary's incorporation. Corporation acquired 100% of the shares of an existing Venezuela corporation, changed its name to An-Son Drilling, S.A., transferred the shares to Drilling, a newly created and wholly-owned subsidiary, and caused the shares of Drilling to be spun-off. Thus, Corporation is responsible for the present corporate identity of S.A. and this requirement has been satisfied.

5. Subsidiary has grossly inadequate capital. As mentioned above, S.A. has needed subsidization from Corporation, and loans to meet its operating expenses. By the admission of Carl B. Anderson, Jr., S.A. was seriously under-capitalized (Anderson Dep., p. 35).

6. Parent pays salaries or expenses of subsidiary. As discussed above, Corporation subsidized S.A.'s losses for years, and after 1973, has guaranteed payment of S.A.'s debts.

7. Subsidiary has no business except with its parent or subsidiary or has no assets except those transferred by its parent or subsidiary. The most profitable business conducted by S.A. is contract drilling for Shell performed by the Tender GP–8 and related equipment. This business relationship was originally established by Carl B. Anderson, Jr., in 1967, who, as president of Corporation negotiated both the purchase of the Tender GP–8 and a drilling contract with Shell, which has been continuously renewed. Both the business performed by S.A. and the assets owned by it were bought by or transferred to it by Corporation.

8. Directors and officers do not act independently in interests of subsidiary. Corporation has caused S.A.'s debt and capital to be restructured in accordance with Corporation's policy, and decisions respecting property owned by S.A. were routinely made by the Corporation's directors. Corporation arranged for the purchase and financing of major new equipment for the Tender GP–8, and, on at least one occasion transferred domestic equipment to S.A. at a price apparently dictated by Corporation. It appears from an entire review of the Anderson deposition that Corporation perceived S.A., both objectively and subjectively, as a mere foreign extension of itself.

9. Formal legal requirements of the subsidiary such as keeping corporate minutes are not observed. The Court cannot locate a statement in either the deposition of Carl B. Anderson, Jr. or the other papers on file in this case, which specifically refers to either the existence or absence of corporate minutes on behalf of S.A. However, throughout the Anderson deposition, the witness made reference to decisions, statements, and reports concerning S.A. contained in Corporation's minutes. In the absence of evidence to the contrary, the Court will assume that no separate minutes were kept for S.A.

10. Distinctions between parent and subsidiary are disregarded or confused. That this is the condition of all three An-Son companies is apparent from a reading of the deposition of Anderson. No separate offices are kept as between Corporation and Drilling. The meetings of directors and stockholders are held conjointly. Statements in the minutes are unclear as to which An-Son company they refer. Although the payrolls of Corporation and Drilling are kept separate, and although apparently Corporation has made a good faith effort to separate the two, the distinctions between Corporation, Drilling and S.A. are still hazy.

11. Subsidiary does not have full board of directors. There is some confusion as to who comprised the Board of Directors of S.A. at the time of the accident complained of herein. At the time of Anderson's deposition, the directors were Anderson, Alva Hugh Stephenson, the vice president of both Drilling and S.A., and Billy Raymond Price, the current resident manager of the Tender GP–8. Mr. Anderson stated in his deposition that he no longer travels to Venezuela. Mr. Stephenson spends approximately one week of every quarter in Venezuela. The remaining member of the Board of Directors is, of course, a full time resident of Venezuela. Considering Mr. Anderson's avowed absence from Venezuela, it is unlikely that this group ever meets.

█ The record at this point is not complete with respect to the degree of control exercised over S.A. by either Drilling or Corporation. The Court may have inadvertently oversimplified certain segments of the testimony of Mr. Anderson, or given undue weight to other segments. It is perhaps important to note that the Court is not faced yet with the question of holding the parent corporation liable for the acts of its subsidiary corporation or vice versa. While that question may eventually be reached, the legal test of liability is different and more stringent than the test relating to the amenability of process and forum. *Reul v. Sahara Hotel*, 372 F.Supp. 995 (S.D.Tex. 1974).

█ Again, in connection with the above discussion, the Court has not attempted to distinguish Corporation and Drilling with respect to the exercise of control of either of them over S.A. It is virtually impossible to separate the identity and define the relationship of the three companies at this point in the litigation. Rather than define Corporation's control over Drilling, and Drilling's control over S.A., the Court has, for purposes of determining personal jurisdiction, found that either Corporation or Drilling or both have exercised sufficient control over S.A. to enable the Court to disregard the separate identities of each and find that the acts of Corporation and Drilling, both doing business in Oklahoma, may be imputed to S.A. to give this Court jurisdiction.

S.A. argues in its brief on the motion that the alter ego theory may be used *only* to disregard the identity of the subsidiary and obtain jurisdiction over the parent, i. e., in this case, to obtain jurisdiction over Corporation or Drilling in Venezuela. S.A. cites no cases in support of this argument. As stated above, the alter ego theory may be employed by the Court to prevent injustice, and the Court can see no reason why finding that acts of Corporation and Drilling may be imputed to S.A. to find that S.A. is doing business in Oklahoma is in any way different from finding that the acts of S.A. may be imputed to Corporation and Drilling to find that Corporation and Drilling are doing business in Venezuela. See, e. g., *Frazier, III v. Alabama Motor Club, Inc.*, 349 F.2d 456 (5th Cir. 1965); *Reul v. Sahara Hotel*, supra.

**32**

For the purposes of the Court's decision on S.A.'s Motion to Dismiss for lack of jurisdiction, the Court holds that the three An-Son companies, while separate entities for bookkeeping convenience and tax purpose, are for all operational purposes one corporation. Since both An-Son Corporation and An-Son Drilling Corporation clearly do business in Oklahoma, it is the holding of the Court, accordingly, that the activities of these corporations may be imputed to the Venezuelan corporation. For purposes of in personam jurisdiction, S.A. can be said to be "doing business" in Oklahoma.

Having found the exercise of personal jurisdiction over S.A. to be proper under the Oklahoma long-arm statutes, the Court will next determine whether service can be had on S.A. The relevant Oklahoma statute is 18 O.S.1971, § 1.204a which reads:

"In all cases where a cause of action has accrued or shall accrue to any person by reason of a foreign corporation doing business in this state or having done business in this state or while a foreign corporation was doing business within this state and such foreign corporation has no registered agent in this state upon whom service of summons or other process may be had, an action may be filed against such foreign corporation in any county in the state and service of summons or other process may be had upon the Secretary of State, and such service shall be sufficient to give jurisdiction of the person to any court in this state having jurisdiction of the subject matter whether sitting in county where the Secretary of State is served or elsewhere in the state."

Defendant argues that this statute requires that the cause of action arise from the acts of the corporation in Oklahoma which give rise to the cause of action. Obviously, the injuries to plaintiff complained of herein did not arise from any act of S.A. in Oklahoma. However, a careful reading of section 1.204a does not require the strained construction defendant would have us adopt. One alternative under which section 1.204a may be used for service is "where a cause of action has accrued . . while a foreign corporation was doing busi-

ness within this state . . ." Once Corporation's or Drilling's activities are imputed to S.A., this requirement is met and service is proper under section 1.204a. *Continental Oil Co. v. National Fire Ins. Co. of Conn.*, 541 P.2d 1315 (Okl.1975).

Although S.A. objects to jurisdiction over the subject matter in the title of its Motion to Dismiss, this issue was not a part of its brief. An action in admiralty may be brought against a foreign corporation in any United States District Court which can obtain personal jurisdiction over that corporation. *Bartlett-Collins Co. v. Surinam Navigation Co.*, 381 F.2d 546 (10th Cir. 1967). The Court can see no reason why subject matter jurisdiction does not exist. Nor is insufficiency of service of process, alleged by S.A. in the title of its motion, relevant, once the Court has found that personal jurisdiction exists and service may be had under Oklahoma law. The record reflects that S.A. has been served, and in the absence of any argument in S.A.'s brief as to insufficiency of service, the Court will assume that this defense is mooted by the Court's having found personal jurisdiction over S.A. to be proper.

In accordance with the above rulings, defendant An-Son Drilling Corporation's Motion to Dismiss is denied, and defendant An-Son Drilling, S.A.'s Motion to Dismiss is denied.