James V. KEY; Francis L. Key; John
E. Outhouse; Glenda Outhouse,
Plaintiffs–Appellees,

v.

LIQUID ENERGY CORPORATION, a
Delaware Corporation; Mitchell Ener-
gy and Development Corporation, a
Texas corporation, Defendants–Appel-
lants.

No. 88–2643.

United States Court of Appeals,
Tenth Circuit.

June 21, 1990.

As Amended Aug. 23, 1990.

Daniel J. Hoehner, Tom L. King and Jeff R. Beeler, King, Roberts & Beeler, Oklahoma City, Okl., for defendants-appellants.

Howard K. Berry, Jr., Berry and Berry, Oklahoma City, Okl., for plaintiffs-appellees.

Before BALDOCK and EBEL, Circuit Judges, and CONWAY,* District Judge.

---

* The Honorable John E. Conway, United States District Judge for the District of New Mexico, sitting by designation.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See Fed.R.App.P.*, 34(a); 10th Cir.R. 34.1.9. Therefore, the case is ordered submitted without oral argument.

This is an appeal from an order of the United States District Court for the Western District of Oklahoma denying the Motion for Judgment Notwithstanding the Verdict, or in the Alternative, Motion for a New Trial, filed by Liquid Energy Corporation and Mitchell Energy and Development, collectively referred to as "the defendants" or "the appellants." The final order was entered on September 19, 1988, and this appeal was timely filed on October 18, 1988. The following issues are raised on appeal.

As to appellant Mitchell Energy and Development (Mitchell): whether the district court erred in failing to direct a verdict or grant a judgment notwithstanding the verdict in favor of Mitchell. As to both appellants: whether the district court erred in failing to direct a verdict or grant a judgment notwithstanding the verdict in favor of the appellants on the issue of proximate cause; whether the district court erred in failing to direct a verdict or grant a judgment notwithstanding the verdict in favor of the appellants on the issue of legal duty; whether the district court erred in giving a negligence *per se* instruction, and an instruction regarding future loss of earnings, and in not giving an instruction regarding proximate cause; and, whether the district court erred in awarding two rates of prejudgment interest.

We are persuaded by Mitchell's argument that the district court erred in failing to direct a verdict or grant judgment notwithstanding the verdict as to Mitchell, and we will therefore reverse the district court on that basis. Having made this determination, we need not address the remaining issues as to appellant Mitchell. In addition, we find that the district court did not err in refusing to direct a verdict or grant a judgment notwithstanding the verdict in favor of Liquid Energy on either the issue of proximate cause or legal duty. We also find that the district court properly in-

structed the jury and will therefore affirm on those issues related to the jury instructions. Finally, we find that the district court did not err in awarding two separate rates of pre-judgment interest, and instead acted within the scope of its discretion. The district court will therefore be affirmed on this final issue.

*Facts*

This is an action for damages resulting from an explosion which injured plaintiffs/appellees Key and Outhouse, who were employed as truck drivers by the Great Plains Transport Company on February 6, 1985, the date of the accident. In January of 1985, approximately one month before the accident, the plaintiffs began hauling butane condensate from the appellant Liquid Energy Company's facility in Stinnett, Texas, to Velma, Oklahoma. Liquid Energy has three separate stations for loading condensate, variously known as Canadian River, Barnhill and TP–1. On February 5, 1985, both Key and Outhouse loaded their tanks at the Canadian River plant pursuant to Liquid Energy's instructions. The appellees then drove to Clinton, Oklahoma where they stopped for the night. The following morning, samples were taken from their trailers, and the appellees drove on to Velma, Oklahoma. Upon arriving at the Lee Petroleum facility in Velma, the appellees were advised by a Mr. Kappel, a Lee Petroleum employee, that tests had to be made on the condensate they were transporting. The tests were made on the product contained in the trailer driven by Key, but Kappel was unable to perform the tests on the condensate in the trailer driven by Outhouse due to pressure in the tank. After lunch, on February 6, Kappel and Outhouse decided to take a sample from the second trailer for testing. Outhouse checked the rear vent, then both men got on top of the trailer and prepared to open the rear hatch. When Outhouse released the rear hatch, the still pressurized condensate blew out in a 15–foot high column. While airborne, the condensate ignited, causing the explosion which resulted in the appellees' injuries.

The appellees' theory at trial was that the product they received from Liquid Energy was a high pressure condensate and should not have been transported in the type of trailers provided.

At the close of the evidence, the defendants moved for a directed verdict which was denied by the trial court. Defendant Mitchell specifically moved for a directed

verdict on the theory that it could not be held liable for the acts of its subsidiary, Liquid Energy. The jury returned a verdict finding negligence on all parties and awarding damages to the plaintiffs. The defendants then filed a Motion for Judgment Notwithstanding the Verdict ("JNOV"), or in the Alternative, for a New Trial, which was also denied by the trial court. The defendants now request the trial court be reversed on these rulings and that judgment be entered in their favor, or in the alternative, that a new trial be ordered.

In ruling on an appellant's request to overturn a trial court for failure to direct a verdict or grant a JNOV, the appeals court must determine whether the trial court's refusal to set aside the jury verdict constituted a manifest abuse of the trial court's discretion. *Karns v. Emerson Electric Co.*, 817 F.2d 1452 at 1456 (10th Cir.1987); *Brown v. McGraw Edison Co.*, 736 F.2d 609, 616 (10th Cir.1984). A verdict claimed to be against the weight of the evidence is normally not reversed absent an "unusual situation" or a "gross abuse of discretion." *Brown*, 736 F.2d at 616. We now turn to Mitchell's first argument regarding the trial court's denial of a directed verdict or a JNOV in favor of Mitchell.

Mitchell urges that the sole basis for judgment against it is its status as a parent corporation of Liquid Energy. In support of its motion for directed verdict and/or JNOV, Mitchell argued that it was at all relevant times a distinct corporate entity, insufficiently related to Liquid Energy to warrant liability. Mitchell further argued that the plaintiff had failed to prove that it should be liable given the factors set forth in *Rea v. An–Son Corp.*, 79 F.R.D. 25 (W.D.Okla.1978). Mitchell states that at the trial the plaintiffs were only able to prove that the Liquid Energy facility at Stinnett, Texas had a sign which read "Liquid Energy Company, a Subsidiary of Mitchell Energy and Development Company." In its favor, Mitchell argues that there was no evidence that any of Mitchell's employees were in any way involved in the alleged acts of negligence, and further argues that Liquid Energy was owned entirely by Liquid Energy Corporation and not by Mitchell. Finally, Mitchell argues that it has no interest in any of the field liquids sold by Liquid Energy.

By way of response, the appellees urge that Liquid Energy and Mitchell Energy are both energy-related businesses, that Liquid Energy is designated a subsidiary of Mitchell on the sign in front of the Canadi-

an River plant, and that the post office box address in Woodlands, Texas is the same for both corporations. As a legal basis for imposing liability on Mitchell, the appellees contend that the relationship between Mitchell and Liquid Energy is analogous to that of an employer and an independent contractor and not necessarily that of a parent and its subsidiary corporation. Having thus characterized the relationship between Mitchell and Liquid Energy, the appellees argue that the employer, by analogy, Mitchell, cannot shed liability for the actions of the independent contractor, by analogy, Liquid Energy, where the work involved has a peculiar risk of physical harm to others. This argument is founded on section 413 of the Restatement Second of Torts and is commonly known as the Peculiar Risk Doctrine.

We will first address the validity of Mitchell's argument under traditional parent/subsidiary analysis and will then turn to the alleged applicability of the Peculiar Risk Doctrine.

This Circuit's prior decisions on the law applicable to parent/subsidiary corporations are clear, and consistent with Oklahoma law in setting forth the appropriate concerns when determining whether a parent may be held liable for the acts of its subsidiary. In *Fish v. East*, 114 F.2d. 177 (10th Cir.1940), this Court addressed the question of the liability of a parent corporation for the acts of its subsidiary in the context of a bankruptcy proceeding. The Court held that where the subsidiary is a mere instrumentality of the parent the corporate entity may be disregarded. In addition, the Court identified the following determinative circumstances for deciding whether a subsidiary is a mere instrumentality of the parent:

whether the parent owns all of the stock of the subsidiary; whether the corporations have common directors and officers; whether the parent finances the subsidiary; whether the parent caused the subsidiary's incorporation; whether the parent pays salaries or expenses of the subsidiary; whether the subsidiary has business with anyone outside the parent, or assets which have not been transferred to it by the parent; whether the directors and officers act independently in the interest of the subsidiary; whether the formal legal requirements of the subsidiary, such as keeping minutes, are observed; whether there are distinctions between the parent and subsidiary that are routinely disregarded or con-

fused; and, whether the subsidiary has a full board of directors.

114 F.2d. at 191.

The ruling in *Fish* was adopted by the United States District Court for the Western District of Oklahoma in *Palmer v. Stokely*, 255 F.Supp. 674 (W.D.Okla.1966), and *Rea v. An–Son Corp.*, 79 F.R.D. 25 (W.D.Okla.1978), which are consistent with cases from the Oklahoma Supreme Court. *See, Frazier v. Byron Memorial Hospital Auth.*, 775 P.2d 281 (Okla.1989) and *Gulf Oil Corp. v. State*, 360 P.2d 933 (Okla. 1961). In *Palmer*, the court elaborated on the *Fish* analysis by adding that the corporate veil should be pierced when a failure to do so would defeat public convenience, justify wrong and protect fraud. 255 F.Supp. at 681. In *Rea* the district court added that the fact that a corporation owns all of the stock of another corporation does not destroy the identity of the latter as a distinct legal entity, 79 F.R.D. at 29, and the fact that stockholders or officers of two corporations may be the same persons does not operate to destroy the legal identity of either corporation. *Id.*

This Court reaffirmed the determinative considerations set out in *Fish, Palmer* and *Rea* in *Luckett v. Bethlehem Steel*, 618 F.2d 1373 (10th Cir.1980), a tort case which more closely parallels the instant case than those cited above. There the Court held that even though a parent corporation indirectly owned seventy percent of the stock of a foreign subsidiary, furnished ten of the managing officers of the latter, many of whom held managerial posts in the parent, and had contracted to furnish the subsidiary with technical services and manufacturing equipment as well as locating business, it could not be said that the subsidiary was the mere alter ego instrumentality of the parent so as to hold the parent liable for any negligence of a subsidiary employee, especially absent any showing of fraud or inequitable conduct resulting from the use of separate corporate structures.

In *Luckett* this Court cautioned that whether a separate corporate structure was adopted for the purpose of fraud or illegality is ordinarily a fact question for the jury; however, this question should not be submitted to the jury if the evidence discloses no real issue of disputed fact. 618 F.2d at 1379.

■ Turning then to the present case, it is clear that in order for the plaintiffs to prevail against Mitchell for the acts of Liquid Energy, they must establish that Liquid Energy is a mere instrumentality or alter

ego of Mitchell under the *Rea* test, and/or, show that the use of the separate corporate structures somehow results in fraud, illegality, or inequity.[1] The plaintiffs cannot carry this burden by a simple showing that the parent wholly owns the subsidiary, or that the corporations share some personnel.

■ As noted above, the only facts the plaintiffs offered throughout the conduct of this case were that a sign in front of the Canadian River Plant designated Liquid Energy as a subsidiary of Mitchell, and that the mailing address for both corporations was the same. Even assuming that this is the case, such declarations simply do not meet the requirements outlined above.

On the public policy issue of inherent injustice attributable to the maintenance of separate corporate structures, the plaintiffs failed to offer any evidence that the Mitchell/LEC relationship is detrimental to the public good, justifies wrong, or protects fraud. Even if we were inclined to rule in favor of the appellees on this issue, we would be forced to do so without an evidentiary basis.

Therefore, having concluded that the plaintiffs did not meet their burden at trial, we find the appellant Mitchell's argument persuasive on the first issue. We conclude that the trial court abused its discretion in failing to grant the motion for directed verdict and the Motion for JNOV on this issue.

■ We now address the propriety of adopting the appellees' reasoning that this matter should be approached in the context of an employer/independent contractor relationship rather than a parent/subsidiary corporation relationship.

We must begin with the observation that the appellees have offered no authority for application of the employer/independent contractor analysis to a cause involving two distinct corporations. In fact, the provision on which the appellees rely, section 416 of the Restatement Second of Torts has, so far as we are able to discern, never been applied in the parent/subsidiary context. Instead, the doctrine has been applied to general contractors who hire subcontractors, *El–Meswari v. Washington Gaslight Co.*, 785 F.2d 483 (4th Cir.1986);

the owner of a ship who hired an independent contractor to make repairs, *Futo v. Lykes Bros. S.S. Co., Inc.*, 742 F.2d 209 (5th Cir.1984); and the owner of an ice cream sales operation who hired independent contractors to do actual sales, *Wilson v. Good Humor Corp.*, 757 F.2d 1293 (D.C. Cir.1985). The question thus presented is whether there is a sufficient reason to apply principles from the employment law regime to traditional corporate law. We conclude that no such rationale has been presented here.

■ The Peculiar Risk Doctrine is a tool whose application assures that an employer may not escape liability for especially hazardous conduct simply by hiring someone else to do the dangerous work. *Minnetonka Oil Co. v. Haviland*, 155 Pac. 217 (Okla. 1916). As such, the doctrine provides a remedy for those who are injured by the conduct of one acting at the behest of an employer, or otherwise once removed party. In essence, the Peculiar Risk Doctrine allows a plaintiff to reach beyond the actor and hold the one who directed the offensive conduct responsible. In determining whether to extend this remedy to putative plaintiffs in suits alleging a parent/subsidiary relationship, one consideration is whether such relief is already available. We find that the laws regulating corporations provide for adequate mechanisms to pierce the corporate veil, thereby providing plaintiffs an adequate remedy, and assuring that the corporate structure is not used to perpetrate inequity. *See, Town of Brookline v. Gorsuch*, 667 F.2d 215 (1st Cir.1981); *C.C.M.S. Publishing Co., Inc. v. Dooley–Maloof, Inc.*, 645 F.2d 33 (10th Cir. 1981); and *Luckett v. Bethlehem Steel Corp., supra.*

Based on the foregoing, we find no basis for extension of the Peculiar Risk Doctrine to the present case. In failing to direct a verdict or grant JNOV on the issue of the defendant Mitchell's liability, the trial court abused its discretion and is hereby reversed.

The second and third issues on appeal now regard only the defendant Liquid Energy and are directed at the question of whether the trial court should have directed a verdict or granted judgment notwith-

---

1. We need not decide whether under Oklahoma law proof that a subsidiary corporation is the mere instrumentality or alter ego of its parent corporation is enough to pierce the corporate veil of the subsidiary or whether the plaintiff must also establish fraud, illegality or inequity, because here we hold that the plaintiffs failed to prove either (1) mere instrumentality or alter

ego, or (2) fraud, illegality or inequity. Compare *Tara Petroleum Corp. v. Hughey*, 630 P.2d 1269, 1275 (Okla.1981) and *Gulf Oil Corp. v. State*, 360 P.2d 933, 936 (Okla.1961) with *Sautbine v. Keller*, 423 P.2d 447, 451 (Okla.1966) and *Mainord v. Sharp*, 569 P.2d 546, 548 (Okla.Ct. App.1977).

standing the verdict on the issues of proximate cause and legal duty. We address the proximate cause issue first.

■ Liquid Energy contends that the evidence presented by the plaintiffs failed to establish that the conduct of the defendants was the proximate cause of their injuries. On review of trial court's denial of a motion for judgment n.o.v., we view the evidence and the inferences therefrom in the light most favorable to the prevailing party. *Barnett v. Life Insurance Co. of the Southwest,* 562 F.2d 15, 17 (10th Cir. 1977). We also note that it is for the trier of fact to choose from conflicting inferences those compatible with common sense and reasonable prudence. *Moore v. Ledbetter,* 383 P.2d 876, 879 (Okla.1963). If there is competent evidence introduced, even though conflicting, the questions of negligence and proximate cause must be left to the jury. *Martin v. Farmers Cooperative Exchange,* 368 P.2d 1012, 1015 (Okla.1962). Only when the trial judge can conclude that all reasonable men would agree that the defendant's negligence was not the proximate cause of an injury should a motion for directed verdict, or judgment n.o.v., be sustained.

■ Proximate cause is defined as an event which, in the natural and continuous sequence, unbroken by any independent cause, produces an event and without which that event would not have occurred. *Mathers v. Younger,* 58 P.2d 857, 862 (Okla.1936). In order for a party to recover under a theory of negligence, there must be a causal connection between the actions of a wrongdoer and the injury.

■ At trial, the plaintiffs introduced evidence and corroborating expert testimony that the presence of butanes in the field liquids, combined with the transport of those liquids in an improper tanker, was the reason for the explosion. The field liquids loaded into Outhouse's tanker by Liquid Energy were rated at 45 PSI at 100 degrees F., while the tanker was rated only for materials of 16 PSI at 100 degrees F. These facts are supported by the load ticket, (which indicates that the more highly volatile material was in fact loaded), the difference in the color of the field liquids, and the chromatograph tests which indicated the presence of butane. The plaintiffs argued that but for the loading of the improper materials by Liquid Energy, the accident would never have occurred.

The defendants' expert testified that the reason for the explosion was the improper venting of the tanker, and not the type of liquid loaded. The expert further testified that the fact that the improper liquid was loaded only created the conditions necessary for the accident to occur.

This testimony created a conflict regarding proximate cause that the jury was entitled to evaluate. In conducting their evaluation, the jury is not bound by the testimony of the defendants' experts. *See generally, Marathon Battery Co. v. Kilpatrick,* 418 P.2d 900 (Okla.1965). Based on the evidence before it, the jury was entitled to conclude that the proximate cause of the explosion was in fact the negligent act of Liquid Energy in loading the trailer with a more highly combustible material than it was designed to carry.

Having viewed the evidence and the inferences therefrom in the light most favorable to the prevailing party, we conclude that the evidence in the defendants' favor is not of such a conclusive nature as to require that the jury verdict be set aside. We therefore find that the trial court did not err in refusing to grant the motion for directed verdict or judgment n.o.v. and will affirm the trial court on this issue.

■ Turning now to the issue of whether Liquid Energy owed a legal duty to the plaintiffs, we note that the appeals court independently reviews the trial court's conclusions on legal issues and need not defer to a trial court's decisions on the law. *Pullman–Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982). Liquid Energy argues that it did not owe a duty to the plaintiffs insofar as they are not members of the class intended to be protected under the Code of Federal Regulations' section applicable to the transportation of hazardous materials.

■ The transportation of hazardous materials is regulated by 40 C.F.R. § 171.1 (1984), *et seq.* Section 171.2(a) provides that:

> No person may offer or accept a hazardous material for transportation in commerce unless that material is properly classed, described, packaged, marked, labeled, and in condition for shipment as required or authorized by this subchapter.

Section 171.2(b) provides that:

> No person may transport a hazardous material in commerce unless that material is handled and transported in accordance with this subchapter, or an exemption issued under Subchapter B of this chapter.

Forty-nine C.F.R. § 172.1, *et seq.* sets forth the hazardous materials governed by the Regulations and § 172.3(a) states that:

This part applies to—(1) Each person who offers a hazardous material for transportation, and (2) Each carrier by air, highway, rail, or water who transports a hazardous material.

Liquid Energy would have this panel read the applicable regulations in such a fashion as to exclude the drivers of the transporting vehicle from that class of individuals who are protected by the regulations applicable to offerors of hazardous material for transportation under C.F.R. § 171.2(a). Such a reading would establish the rule that a hazardous materials provider owes a duty to the general public, but not to the entity who will necessarily be in contact with the material being transported.

The appellant argues that this reading makes sense in light of the fact that the transporter of the hazardous materials also has a duty to the public as defined in 49 C.F.R. 172.3(a)(2). We disagree. The more appropriate reading of this Code section is to hold, as we do now, that the duties outlined in 49 C.F.R. 171.1, *et seq.*, apply to the general public and to offerors and transporters of hazardous materials in their dealings with one another. Thus, just as the transporter has a duty to provide the appropriate equipment for the job of transportation, the offeror has a duty to conform to standards of due care in offering or transferring the material in question to the transporter. To hold otherwise would subvert the intent of this section of the Code which was enacted to regulate and protect individuals from the dangers of hazardous material transportation.

Having reached this conclusion, we find that the trial court properly denied Liquid Energy's Motion for Directed Verdict and Motion for Judgment n.o.v. We therefore affirm the trial court on this issue.

The next issue on appeal is whether the trial court erringly gave a jury instruction on negligence *per se* and future loss of earnings, and wrongfully failed to give an instruction regarding proximate cause versus condition.

We have reviewed the instructions of the trial court as a whole and find that they fairly embody the law applicable to the issues involved and result in no prejudice to the defendant. *Thweatt v. Ontko*, 814 F.2d 1466 (10th Cir.1987), *Boyles v. Oklahoma Natural Gas Co.*, 619 P.2d 613 (Okla.1980).

 The final issue before us is whether the trial court erred in awarding two separate rates of pre-judgment interest. The provisions of Title XII, Okla.Stat.Ann. § 727, in effect at the time this lawsuit was instituted, provided for the award of pre-judgment interest at a rate of 15%. Title XII was amended effective November 1, 1986 in a manner that tied the applicable rate of pre-judgment interest to the United States Treasury Bill rate. For purposes of this case, the amendments effectively reduced the applicable interest rate to 10.03%. At the conclusion of the trial, the trial judge awarded the plaintiff pre-judgment interest at the rate of 15% for the time period before November 1, 1986 and 10.03% for the time period after November 1, 1986. On appeal, the defendants jointly urge that the pre-judgment interest rate should be uniform and should reflect the post-November 1986 amendments.

We disagree. We find that the trial court clearly acted within its discretion in awarding the 15% interest rate, thereby recognizing that the plaintiff was entitled to the prevailing rate at the time the action was instituted. *See, Nichols v. T.I.M.E.—D.C., Inc.*, 373 F.Supp. 811 (E.D.Okla.1973).

In accordance with the foregoing discussion, the trial court's judgment is hereby REVERSED for failure to direct a verdict or grant a judgment notwithstanding the verdict as to the appellant Mitchell and AFFIRMED on the remaining issues.